Opinion by
White, P. J.
§ 413. Appeal from justice''s to county court; certiorari or other process to bring up or perfect the record; case stated. Grinnan brought suit in justice’s court on two notes executed to him by one Pierce, amounting to the sum of $181.86, ándito foreclose a mortgage given to secure them, on certain property, amongst which was four bales of cotton, alleged to be in possession of J. H. Brown & Co., who were also made defendants. This cotton was seized under sequestration, but on motion of Brown & Co. the writ was quashed, and the cotton turned over to them, and the suit as to Brown & Co. was then dismissed. On the trial, judgment by confession was rendered against Pierce for the amount of the notes, and foreclosing the mortgage in the hands of Pierce: Prom this judgment Grinnan appealed to the county court, and there he filed an amended claim, alleging that one Butler had taken and sold the four bales of cotton to Brown & Co. without the consent of Pierce, and that Brown & Co. had disposed of the same since its release from the sequestration; wherefore he prayed for a judgment against Brown & Co. for its value. Brown & Co. moved to dismiss the. appeal, amongst other grounds, because the appeal bond did not correctly describe the judgment appealed from. Plaintiff asked for and procured from the court a certiorari to bring up a more perfect record, and the supposed defect was by this means cured. Defendants moved to dismiss the certiorari, which motion was overruled. On the trial in the county court, plaintiff again recovered a judgment against Pierce for $194, etc., and an order and decree foreclosing the mortgage; also a judgment against J. H. Brown & Co. for $143.50, the value of the four bales of cotton. Brown & Co. appeal to this court. *364 The first errors assigned bring in question the legality of the action of the court in awarding a writ of certiorari to complete the record. When an appeal is taken from the justice’s to the county court, it is made the duty of the justice to make out a true .and correct transcript or copy of all entries made on his docket in the cause, and transmit the same, with the original papers in the cause, to the clerk of the county court. [E. S. art. 1640.] The appeal bond is one of the original papers to be thus sent up. [W. & W. Con. Eep. § 1272.] It is one of the essentials to a valid appeal boncf that it should correctly describe the judgment appealed from. If it fails so to do, the upper court will dismiss the appeal, because, on account of the misdescription, it cannot acquire jurisdiction of a judgment which, apparently, was not appealed from. But in this case the defect was really not a misdescription in the bond of the judgment .as rendered by the justice, but the justice had misdescribed his own judgment in his transcript. The justice’s transcript was not a true copy of his own entry of the judgment. When Brown & Co. moved to dismiss the appeal because the bond misdescribed the judgment, appellant asked and obtained a certiorari to the justice to send up a true or more perfect transcript. This order granting a certiorari for such a purpose, it is said, was an illegal assumption of authority on the part of the county court; that a certiorari to complete a record is known only to the practice in the higher appellate courts, by virtue of certain rules specially provided for their government. This may be true in a literal sense; but the county court is expressly empowered with authority, by the constitution and laws, to issue all writs necessary to the enforcement of its own jurisdiction. [Const, art. Y, sec. 16.] If such a writ as the one used in practice by the higher appellate courts could be used by the county court to enforce its jurisdiction, we see no reason why it should not be so used. But be that as it may, the writ was issued, and subserved the purpose of bringing up “a true *365 copy” of the justice’s judgment entry, from and by which it appeared that the appeal bond correctly described the judgment, and gave the court proper jurisdiction of the case. This being so, we would not reverse simply on account of an irregularity, if such it was, in the proceeding by which the lower court was enabled to try the case in the light of the facts as they truly existed of record. “A true copy” of his entries was what the statute demanded should be sent up by the justice. Appellant was entitled to this; and having obtained, by means of the supposed irregularity, that only to which he was entitled, we would not interfere with the authority by which it was obtained, where the authority was of doubtful character. As stated above, we are of the opinion that, under the constitutional powers granted the county court, it could properly avail itself of the writ of certiorari, or «any other writ necessary to enforce its jurisdiction. With regard to any supposed irregularities in relation to prerequisites, under the rules of court in application for the writ, such objections should have been addressed to the court below before its issuance, and are not subject to revision here.’
§ 414. Issue of title; mortgagee’s rights as to mortgaged property taken by a wrong-doer; equitable remedy of mortgagee against one who converts mortgaged property, with notice of mortgagee’s claim. Another error assigned is, that “the court erred in deciding the legal title, because that was not an issue in the case.” It is shown by the agreed statement of facts, “that Alex. Pierce raised on the premises described in the mortgage, five bales of cotton. That one S. L. Butler demanded said cotton while at the gin of said defendant, Alex.' Pierce, and also of the owner of the gin, for one Mrs. Messer; that defendant refused to consent to said Butler’s taking said cotton; that said • Butler afterward, without the consent of Alex. Pierce, caused four bales of said cótton to be removed from said gin, and deposited in his *366 own name with Brown & Douglas, at Tyler, and which was afterwards sold by them to J. H. Brown & Co., defendants, in whose possession it was at the date of the institution of this suit, at which time .a writ of sequestration was sued out by plaintiff and levied upon said four bales of cotton, which writ was afterwards quashed and .the cotton ordered turned over to J. H. Brown & Co., which was done, and the next morning the cotton was shipped by them to Houston, Texas, after they had been notified by plaintiff that he would still hold them liable.” It was further shown by the facts that neither Brown & Douglas, nor J. H. Brown & Co., at the time of the sale and purchase, had any actual notice of where and by whom, and under what circumstances, the cotton was raised, or that it was claimed by Pierce or plaintiff. Under this statement there can be no doubt but that Pierce could have sued Brown & Co. and recovered, because Butler, having no right to the cotton, could not have sold to even an innocent purchaser without notice, a title which would have divested the true owner. [W. & W. Con. Rep. §§ 260, 270.] A mortgagee, it is true, has no such ihterest as that he can maintain an action of “ trial of the right of property,” under the statute. [W. & W. Con. Rep. §§ 64, 781, 782.] But in some states it is held that he may sue for a conversion of the mortgaged property. [4 Wait’s Act. & Def. p. 708.] Whether, as a general rule, such right exists primarily under our practice with regard to mortgages, it is unnecessary to inquire. In this particular case, we thinly he was, in equity, under the circumstances shown, entitled to his action against Brown & Co. Before they sold the property, they were directly notified of his claim, and that he would hold them liable. They disposed of the property, and put it out of his power to foreclose his mortgage and subject the property to the payment of his debt. If he had the right to an equitable action against them for the conversion, then the question of title, especially the title of J. *367 H. Brown & Co., was an issue in the case to be passed upon by the court. If Butler, the vendor of Brown & Co., was a trespasser and wrong-doer who had no title himself, then it is clear he could convey no title as against an equitable, much less a legal, title. [W. & W. Con. Bep. § 1168.] If Pierce, the mortgagor, in whom the legal title and possession remained, had sold to Brown & Co. without any notice, actual or constructive, to them, of plaintiff’s lien, then indeed the attitude of the parties and their relative rights would have been entirely different, and perhaps the question of innocent purchaser without notice could have been pleaded by defendants. Here,o however, they acquired the property from a wrongdoer— a stranger,— and before they disposed of the same they were fully notified of plaintiff’s claim; notwithstanding which they sold the same and put it out of his power to foreclose his mortgage. Under the peculiar facts of this case, we think plaintiff clearly had, in equity, a good cause of action against Brown & Co. for the value of the property thus converted by them, whether such action could, technically speaking, be called “trover and conversion,” or not. [Jones on Chattel Mortgages, §§ 447-447a.]
§ 415. New trial upon the ground of newly discovered evidence; diligence must he shown. The only remaining question is the correctness of the action of the court in overruling defendants’ motion for a new trial, based upon newly discovered evidence. Butler, the vendor of Brown & Co., was the witness who it was claimed would furnish such newly discovered evidence. It is well settled that a party will not be entitled to a new trial on account of newly discovered evidence, if it is apparent that the failure to discover it in time can be attributable to want of diligence of the party seeking the new trial. It must be shown that it was not owing to any want of diligence that it was not sooner discovered. [W. & W. Con. Bep. §§ 598, 711, 1078; ante, § 220.] Now Butler, being the vendor of the cotton, if defendants failed to *368 ascertain all the facts in his possession before trial, it must have been from their own neglect and want of diligence.
November 5, 1884.
Affirmed.